THE PENNSYLVANIA RD. CO. *v.* THE GREENWALD PACKING CO.

*Railroads—Conversion of shipment by delivery without presentation of bill of lading—Conversion complete although consignee did not inspect shipment—Sections 8427 and 8428, General Code, inapplicable—Conversion not ratified where unauthorized delivery not ratified—Bank, holding title, moved to discharge consignee's attachment against shipment—Conversion by railroad not waived by bank without knowledge thereof—Tort waived by claiming ownership with knowledge of conversion, when.*

1. Under order bill of lading, requiring its surrender before delivery of property shipped, delivery by railway to consignee without presentation of bill of lading or payment of draft was conversion by railway.

2. Railway delivering shipment to consignee without presentation of bill of lading as required was guilty of conversion, though consignee did not inspect shipment; Sections 8427 and 8428, General Code, being unavailable.

3. Conversion of shipment by railway, delivering property to consignee without presentation of bill of lading, as required, was not ratified, where there was no evidence that unauthorized delivery was ratified.

498          OHIO APPELLATE REPORTS.

Penna. Rd. Co. *v.* Packing Co.          [24 Ohio

4. Where consignee attached goods shipped, title to which was in bank holding bill of lading, bank, filing motion to dissolve attachment without knowledge of railroad's conversion of goods by delivery to consignee without presentation of bill of lading, as required, *held* not to have waived conversion.

5. Where shipper or owner takes possession of goods shipped or makes claim of ownership with full knowledge of railroad's conversion and with intention to waive conversion, tort is waived, and waiver cannot be recalled.

(Decided December 20, 1926.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Maxwell & Ramsey,* for plaintiff in error.
*Messrs. Hightower, O'Brien & Porter,* for defendant in error.

BUCHWALTER, P. J. The Greenwald Packing Corporation, plaintiff below, brought this action against the Pennsylvania Railroad Company for damages for the alleged conversion of 100 drums of grease.

The allegations of the petition are: On or about the 13th day of February, 1925, there was delivered at York, Pa., a car containing 100 drums of garbage grease, consigned to Ivorydale, Ohio, with instructions to notify the Procter & Gamble Company, at said destination. The bill of lading was issued to the order of Charles C. Fisher, and indorsed by said Fisher to the plaintiff. The plaintiff thereafter negotiated said bill of lading, together with a draft thereto attached, dated March 3, 1925, to the National Bank of Baltimore, Baltimore, Md. The draft was drawn by the plaintiff on the Procter & Gamble Company, Cincinnati. The bill of lading contained the following provision:

"The surrender of this original order, bill of lading, properly indorsed, shall be required before delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless provided by law, or unless permission is indorsed on this original bill of lading, or given in writing by the shipper."

Plaintiff avers that the National Bank of Baltimore paid it the amount of the draft, $3,226.17, and, thereby, became the owner of the draft and bill of lading and the shipment covered by said bill of lading. Plaintiff further avers. that said bank forwarded the said draft and bill of lading to the Fifth-Third Bank of Cincinnati, with instructions to present said draft, and, only if paid, to deliver said bill of lading to the Procter & Gamble Company. Further, that upon the arrival of said shipment, the defendant notified the Procter & Gamble Company, and, without a surrender of the bill of lading, delivered the shipment to the Procter & Gamble Company, which company had not paid the draft, nor secured said bill of lading.. Plaintiff avers that on July 23, 1925, the National Bank of Baltimore sold, transferred, and conveyed its claim against the defendant to this plaintiff in consideration of the sum of $3,226.17, for which amount, with interest, the plaintiff asks judgment.

The answer of the Pennsylvania Railroad Company is a general denial; and it further asserts that if there was a conversion of the grease by said railroad company said conversion was excused by the said bank in setting up a claim to ownership after the grease had been redelivered to the. railroad company.

The cause came on for hearing, and, at the close

500     OHIO APPELLATE REPORTS.

Penna. Rd. Co. v. Packing Co.     [24 Ohio

of the opening statements of counsel, a motion was made that the court direct a verdict for the plaintiff for the full amount of the claim.

It was agreed by counsel that an agreed statement of fact be submitted, and also certain evidence, including depositions, and the court at the time of granting the motion to direct a verdict had this record before it, in addition to the statements of counsel.

The agreed statement of fact contains practically the allegations of the petition, except as to the conversion, and further sets forth:

"On the evening of Saturday, February 18, 1925, the said carload of grease was delivered by the defendant to the Procter & Gamble Company, without the surrender of the bill of lading. The Procter & Gamble Company thereafter, on February 20th, reloaded said 100 drums of garbage grease in another car, M. K. T. 76525, and turned same back to the defendant. The said grease when turned back to the defendant was in the same condition as when delivered by the defendant to the Procter & Gamble Company. The said Procter & Gamble Company thereupon refused to pay the draft or to take up the bill of lading, which was at the Fifth-Third National Bank. Inasmuch as the Procter & Gamble Company had failed to take up the draft, the plaintiff reimbursed the National Bank of Baltimore $3,226.17, the amount in which they had been given credit, and thereupon received back the bill of lading and draft."

The delivery of the grease to the Procter & Gamble Company without the presentation of the bill of lading was a conversion.

Plaintiff in error contends that there could be

no conversion unless the delivery to the third party had been complete, and that, as there had been no inspection of the shipment, the delivery could not be complete until after inspection and the Procter & Gamble Company had had no opportunity for inspection, and cites Sections 8427 and 8428, General Code. These sections, however, only provide that when the goods have been delivered to the buyer he is not deemed to have accepted until he has had a reasonable opportunity to examine them.

Here delivery had been made, and the Procter & Gamble Company was not entitled to delivery, save only on presentation of the bill of lading.

The only question then remaining is whether or not there was a waiver of the tort or conversion by the Bank of Baltimore, who, at the time of the delivery, held title to the shipment.

Plaintiff in error contends there was either a ratification of the conversion or a waiver thereof.

Had plaintiff or its predecessor in title ratified the conversion, it would have ratified the delivery to the Procter & Gamble Company, without the presentation of the bill of lading. There is no evidence to show that this was done. But it is claimed that there was a waiver of the tort either by laches or by an express act.

It appears from the record that on March 9, 1925, the Procter & Gamble Company filed an action for damages for breach of prior contracts against the Greenwald Packing Corporation, and, on March 10, an attachment was issued against the grease, also attaching the bill of lading and draft. In this action, the National Bank of Baltimore filed a motion to be made a party defendant, and, that motion being granted, the bank then filed a motion

**502**　　OHIO APPELLATE REPORTS.

Penna. Rd. Co. v. Packing Co.　　[24 Ohio

to dissolve the attachment, on the following ground: "For the reason that the plaintiff in the above-entitled action cannot attach the property of the National Bank of Baltimore."

The attachment suit never came to trial. Some agreement was reached by the parties, and an entry of dismissal made. After the dismissal of this action, the grease remained in the possession of the railroad company until it deteriorated, and, on June 3, 1925, the attorney for the National Bank of Baltimore notified the railroad company as follows:

"We now elect to consider this a conversion as of the date of delivery of said car to the Procter & Gamble Company, without surrender of the bill of lading, and, unless this claim is promptly paid, shall sue the railroad company for conversion of the value of said car at the date the same was converted."

On July 23, the Greenwald Packing Corporation paid the amount of money named in the draft, and said draft and bill of lading were assigned to this plaintiff company. Plaintiff was within its rights in treating the matter as a conversion, and was within the time allowed by law and specified in the bill of lading to set up its claim. It took no action with reference to the goods in question except the filing of the motion in the attachment suit, and, unless this constituted a waiver, there is no defense to the action in conversion. The Procter & Gamble Company, by attaching the goods in the hands of the railroad company, and the property of the Greenwald Packing Corporation, would have made no defense to the claim unless the bank, the owner of the shipment, had interposed

the motion. There is nothing in the record to show that the bank knew of the conversion of the goods by the railroad company. Where a shipper or an owner takes possession of goods shipped, or makes claim of ownership with full knowledge of the conversion, and with intention to waive the conversion, the tort is waived, and a waiver once made cannot be recalled. The bank having no knowledge of the conversion, there was no waiver.

The facts here are not in dispute. It might have been error had the court directed a verdict on the opening statements, but, by agreement of counsel, evidence was introduced including the agreed statement of fact, deposition, bill of lading, draft, assignment, and the papers in the attachment case. With this record before the court there was no valid defense to submit to the jury, nor were any facts in dispute which required submission to a jury to establish the plaintiff's case.

Finding no error prejudicial to the plaintiff in error, the judgment of the court of common pleas of Hamilton county will be affirmed.

*Judgment affirmed.*

HAMILTON and CUSHING, JJ., concur.